***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, and having reviewed the competent evidence of record, the Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before Deputy Commissioner Ledford as:
 STIPULATIONS
1. At the time of the injuries giving rise to these claims, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer. Specifically, plaintiff was employed by defendant-emloyer from April 1998 through May 2001, which includes both dates of accident, May 8, 2000 and March 7, 2001.
3. GAB Robins administered defendant-employer's claims at the time of plaintiff's May 8, 2000, injury and Comp First, now North Carolina Insurance Guarantee Association ("NCIGA") administered defendant-employer's claims at the time of plaintiff's March 7, 2001 injury.
4. GAB Robins accepted plaintiff's May 9, 2000, injury on a Form 60.
5. Pursuant to a Form 22, plaintiff's average weekly wage at the time of her May 9, 2000 injury was $256.90, which yields a compensation rate of $171.28.
6. Pursuant to the Form 60, plaintiff received temporary total disability benefits from June 30, 2000 through July 4, 2000. Plaintiff returned to work at full wages on July 5, 2000 and received temporary total disability benefits from August 17, 2000 through August 29, 2000. Plaintiff returned to work at full wages on August 30, 2000 and received temporary total disability benefits from November 28, 2000 through February 18, 2001. Plaintiff returned to work at full wages on February 20, 2001.
7. GAB Robins paid plaintiff $14,073.28 in medical benefits and $2,569.20 in indemnity benefits for her May 8, 2000 injury.
8. From May 2001 through March 2002, plaintiff was employed by the Grove Park Inn Spa Resort. In February 2002, plaintiff returned to work for defendant-employer and has continued to work for defendant-employer through the date of the hearing before the Deputy Commissioner.
9. The parties agreed to try to enter a post-hearing stipulation regarding the dates of insurance coverage. Information in the Industrial Commission database shows that the following regarding coverage:
 a. On May 8, 2000, defendant-employer had workers' compensation insurance with the New Hampshire Insurance Company. The insurance policy number was WC2176828 and the effective dates of coverage were from December 1, 1999 through December 1, 2000.
 On March 7, 2001, defendant-employer had workers' compensation insurance with Legion Insurance Company (now bankrupt), for whom Comp First was the administrator. The insurance policy number was WC51604090 and the effective dates of coverage were from December 1, 2000 through December 1, 2001.
10. The issue before the Commission is to what, if any, additional compensation and benefits is plaintiff entitled.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff began working for defendant-employer, a natural foods store, in April 1998, and was working for defendants at the time of the hearing before the Deputy Commissioner.
2. On May 8, 2000, plaintiff sustained her first injury by accident, which is the subject of this claim. Plaintiff was retrieving some items from the freezer compartment when she caught her left foot between two boxes and twisted her left knee.
3. Plaintiff promptly reported the accident to her supervisor and her claim was accepted as compensable on a Form 60 by the carrier GAB Robins.
4. GAB Robins provided plaintiff with medical treatment and indemnity benefits. Plaintiff initially sought treatment for her knee on May 9, 2000 at Mission St. Joseph's Emergency Room. Plaintiff was referred to Dr. William McKibbin with Asheville Orthopedics for further treatment.
5. On June 30, 2000, Dr. McKibbin performed a left knee arthroscopy with partial medial meniscectomy and debridement. Dr. McKibbin's post-operative diagnosis was left knee anterior horn medial meniscus tear with scar tissue overlying the lateral femoral condyle.
6. As recited in the stipulations, plaintiff received temporary total disability benefits from the date of surgery until she returned to work at full wages on July 5, 2000. Plaintiff went out of work and again received temporary total disability benefits from August 17, 2000, through August 29, 2000.
7. Plaintiff sustained another injury by accident in August 2000 when she stumbled. Following this accident, plaintiff complained to Dr. McKibbin of continued left knee pain. Dr. McKibbin felt that plaintiff had failed to improve with conservative treatment, and that plaintiff needed a status-post left knee arthroscopy with acute traumatic event. Dr. McKibben referred her for evaluation and treatment by Dr. Jay Jansen at Blue Ridge Bone Joint.
8. Dr. Jansen first saw plaintiff on November 28, 2000. Based upon his review of her MRI and the physical examination, Dr. Jansen concluded that plaintiff had a probable medial meniscus tear. On November 28, 2000, Dr. Jansen performed a diagnostic left knee arthroscopy with partial medial meniscectomy.
9. Plaintiff received temporary total disability benefits from November 28, 2000, the date of surgery, through February 19, 2001, when she returned to work at her full wages.
10. Legion Insurance Company began its coverage of defendant-employer on December 1, 2000, and its claims were administered by Comp First. As a result of Legion's bankruptcy, the NCIGA became a party to this claim.
11. Following plaintiff's second surgery, plaintiff's knee pain improved and for a while she "felt like she had a new knee." On March 7, 2001, before Dr. Jansen released plaintiff at maximum medical improvement, she stumbled when she was carrying a tray of muffins from the bakery and her left foot kicked a box that had been left on the floor, which temporarily aggravated her left knee.
12. Although plaintiff reported this as a new injury, it did not aggravate her knee to the point that she missed work. Attendance records show that plaintiff worked 10 hours that day, 10.6 hours on March 8, 9 hours on March 9, and 6.7 hours on March 10. Over the course of the next seven weeks, before plaintiff resigned from defendant-employer, she worked 42.83 hours, 36.8 hours, 45.65 hours, 40.15 hours, 46.52 hours, 51.23 hours, and 42.2 hours each week, respectively.
13. Plaintiff did not seek immediate medical treatment following the incident on March 7, 2001. On March 20, 2001, plaintiff was seen in a scheduled follow-up visit with Dr. Jansen. She told him about her March 7, 2001 stumble and her complaints after the incident of March 7, 2001, were similar to those prior to the incident.
14. Upon physical examination, Dr. Jansen did not note any new pathology in plaintiff's left knee. Dr. Jansen noted no definite effusion and found that plaintiff's range of motion was full extension to 130 degrees, which was the same as when he last evaluated her on January 11, 2001. Following this examination, Dr. Jansen assigned limited restrictions, which were less stringent than those he assigned following the January 1, 2001 examination. At that time, Dr. Jansen did not order another MRI or recommend any additional treatment.
15. Dr. Jansen examined plaintiff on May 1, 2001 and again found that she had no effusion and had full range of motion in her left knee.
16. Based upon his physical examination at that time, Dr. Jansen determined that plaintiff had reached maximum medical improvement and he assigned a 12% permanent disability rating to the left lower extremity.
17. Dr. Jansen did not continue any prescription medications on May 1, 2001, and released plaintiff to work full-duty, without any restrictions.
18. On May 8, 2001, plaintiff gave defendant-employer her two-weeks' notice of resignation, which became effective May 23, 2001. She began working as a waitress at the Grove Park Inn on May 9, 2001.
19. Plaintiff returned to Dr. Jansen on June 11, 2001. She reported to Dr. Jansen that about ten days earlier she had more pain that was localized to the medial side of the knee extending somewhat proximally. Plaintiff was still working at the Grove Park Inn. Upon physical examination, there was no effusion and she had full range of motion. Dr. Jansen characterized her symptoms as a recent aggravation. However, no further testing or treatment was ordered, and she was released without any work restrictions at that time.
20. In his course of treatment of plaintiff, Dr. Jansen referred her for physical therapy at Haywood Regional Medical Center. A physical therapy note dated September 26, 2001 indicated that plaintiff slipped going down stairs and irritated her knee.
21. Plaintiff was again evaluated by Dr. Jansen on October 9, 2001. At that time, she did not report slipping and falling down any stairs to Dr. Jansen. Upon physical examination, there was no effusion, and her range of motion was essentially unrestricted.
22. Dr. Jansen testified that he did not foreclose as an option, but would not necessarily recommend, another arthroscopic surgery to treat any residual problems plaintiff was experiencing. Considering her history of two prior arthroscopies, Dr. Jansen is not optimistic that further arthroscopy or any other surgical procedure would alleviate plaintiff's pain.
23. Although he did not recommend further surgical procedures, Dr. Jansen remained willing to evaluate plaintiff for any further treatment options that may be reasonably necessary for her left knee.
24. The testimony of Dr. Jansen established that although plaintiff's symptoms and pain were temporarily aggravated after she stumbled on March 7, 2001, she did not suffer additional injury. Dr. Jansen's testimony shows that this was a temporary aggravation or flare up of her symptoms, and not an aggravation of the underlying pathology.
25. The permanent impairment rating assigned by Dr. Jansen following plaintiff's two arthroscopic surgeries included plaintiff's subjective complaints of pain following the incident of March 7, 2001 which was an aggravation of her original injury. Dr. Jansen's testimony showed that he could not apportion or assign any portion of that rating to the March 7, 2001 incident, and the Full Commission finds that plaintiff's permanent impairment rating is causally related to the compensable injury on May 8, 2000 and therefore should be paid by GAB Robins.
26. Plaintiff continued to work at the Grove Park Inn through March 2002. In February 2002, she returned to work for defendant-employer, where she worked at the time of the hearing before the Deputy Commissioner.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident to her left knee on May 8, 2000, arising out of and in the course of her employment with defendants. N.C. Gen. Stat. §97-2(6).
2. Plaintiff has received appropriate medical care, which has been covered by GAB Robins, the carrier on the risk on May 8, 2000. N.C. Gen. Stat. §§ 97-2(19), 97-25.
3. On March 7, 2001, plaintiff was involved in a new incident at work when she stumbled over a box. The greater weight of the medical evidence showed that this incident, while an interruption of her work routine, did not materially aggravate her underlying injury. The evidence of record fails to establish that plaintiff is entitled to benefits for a new accident rather than her ongoing problems from the May 8, 2000 injury by accident. The evidence fails to establish that the NCIGA should pay benefits. N.C. Gen. Stat. § 97-2(6).
4. Compensation may not be awarded under the Act unless there is proof of a disability due to an injury, which injury was the result of an accident arising out of and in the course of employment. Plaintiff has failed to establish that she suffered any loss of wage earning capacity, as a consequence of the incident of March 7, 2001. N.C. Gen. Stat. § 97-2(9); seeRinehart v. Market, 271 N.C. 586, 157 S.E.2d 1 (1967).
5. While additional surgery is not recommended or required, additional medical treatment may alleviate some of plaintiff's complaints. Plaintiff is authorized to see Dr. Jansen for assessment of her current condition and any further treatment options. GAB Robins bears the cost for any additional medical treatment which is causally related to plaintiff's original injury. N.C. Gen. Stat. §§ 97-2(6), 97-2(19), 97-25.
6. Although plaintiff may need additional treatment for pain, she has been determined to be at maximum medical improvement at this time with a 12 % permanent functional impairment to her left knee for which she is entitled to compensation at the rate of $171.28 per week for 24 weeks pursuant to N.C. Gen. Stat. §97-31(15). GAB Robins shall be responsible for payment of compensation for her disability rating.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants-employer through the carrier GAB Robins shall pay plaintiff compensation for her 12% permanent impairment rating to her left leg, at the compensation rate of $171.28 per week for 24 weeks as set forth in N.C. Gen. Stat. § 97-31(15). Such compensation shall be paid in a lump sum, subject to the attorney's fee.
2. Defendant-employer through the carrier GAB Robins shall pay any and all medical expenses incurred or to be incurred by plaintiff for reasonably necessary medical treatment of her left knee. GAB Robins shall continue to provide plaintiff with medical treatment necessary to effect a cure and provide relief, as may be deemed appropriate by Dr. Jansen, plaintiff's treating physician.
3. A reasonable attorney's fee of 25 % of the compensation awarded to plaintiff is approved for her counsel, to be deducted from the compensation due plaintiff.
4. The costs of this action shall be paid by the defendant carrier GAB Robins, including a reasonable expert witness fee of $500.00 to Dr. Jansen for his testimony.
This the 5th day of August, 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_____________ PAMELA T. YOUNG COMMISSIONER
LKM/mlb